UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JOSHUA WAYNE MURPHY,           )
                               )
              Plaintiff,       )
                               )
       v.                      )          No. 2:19-cv-00571-JRS-MJD
                               )
COMMISSIONER, INDIANA DEPARTMENT )
OF CORRECTION,                 )
                               )
              Defendant.       )

**ENTRY DENYING MOTION FOR PRELIMINARY INJUNCTION**

**I. Factual Background**

This civil rights action concerns plaintiff Joshua Murphy's claims that the defendant, Commissioner of the Indiana Department of Correction (IDOC), has burdened his freedoms to exercise his religious beliefs in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Mr. Murphy contends that he is a Sunni Muslim, but the IDOC will not provide him a halal meal tray while it provides kosher trays to other prisoners at no cost. Dkt. 3 at 2. He also claims that the IDOC sells halal food through the commissary, but the prices are too expensive for Muslims to pay. *Id.*

On July 29, 2020, Mr. Murphy filed a motion for preliminary injunction asking the Court to order the IDOC to provide him with a halal meal or halal pre-packages four times per week until his release. Dkt. 45. The defendant filed a response in opposition on August 12, 2020. Dkt. 48. Mr. Murphy filed his reply on August 25, 2020. Dkt. 51.

Mr. Murphy contends that he has been "denied all access" to halal meat or a halal meal tray for eleven months while being incarcerated at Wabash Valley Correctional Facility. Dkt. 46 at 3.

Mr. Murphy states that if inmates cannot buy the halal meals from the commissary due to cost, "they have to eat Kosher which is not Halal." *Id.*

## II. Legal Standard

"A preliminary injunction is an extraordinary remedy." *HH-Indianapolis, LLC v. Consol. City of Indianapolis and Cty. of Marion, Ind.*, 889 F.3d 432, 437 (7th Cir. 2018) (internal quotation omitted). "A party seeking a preliminary injunction must satisfy all three requirements in the threshold phase by showing that (1) it will suffer irreparable harm in the period before the resolution of its claim; (2) traditional legal remedies are inadequate; and (3) there is some likelihood of success on the merits of the claim." *Id.* (internal quotation omitted). In addition, a portion of the Prison Litigation Reform Act provides as follows:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C.A. § 3626(a)(2).

"This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: [P]rison officials have broad administrative and discretionary authority over the institutions they manage." *Westefer v. Neal,* 682 F.3d 679, 683 (7th Cir. 2012) (internal quotation omitted).

Claims under both RLUIPA and the First Amendment are evaluated under the substantial burden test, which requires the plaintiff to show that the defendants substantially burdened his free exercise rights. *See Patel v. Bureau of Prisons*, 515 F.3d 807, 814 (8th Cir. 2008) ("[T]he same definition of 'substantial burden' applies under the Free Exercise Clause, RFRA, and RLUIPA"). "[A] substantial burden on the free exercise of religion . . . is one that forces adherents of a religion

to refrain from religiously motivated conduct, inhibits or constrains conduct or expression that manifests a central tenet of a person's religious beliefs, or compels conduct or expression that is contrary to those beliefs." *Koger v. Bryan*, 523 F.3d 789, 798 (7th Cir. 2008) (internal quotation and citated omitted). It is not for the Court to determine whether the plaintiff's "religious beliefs are mistaken or insubstantial. Instead our narrow function . . . in this context is to determine whether the line drawn reflects an honest conviction." *Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 725 (2014) (internal quotation omitted). "[A] substantial burden can exist even if alternatives to enduring it are available." *Njie v. Dorethy*, 766 F. App'x 387, 391 (7th Cir. 2019) (citing *Hobby Lobby*, 573 U.S. at 720-23).

Once a RLUIPA plaintiff shows that the defendant has substantially burdened his free exercise of his sincerely held religious beliefs, the burden shifts to the defendant to show that its policy represents the least restrictive means to further a compelling government interest. *Holt v. Hobbs,* 135 S. Ct. 853, 863 (2015). This is "the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 544 (1997). Even so, RLUIPA "affords prison officials ample ability to maintain security." *Holt*, 135 S. Ct. at 866. "[P]rison security is a compelling state interest, and . . . deference is due to institutional officials' expertise in this area." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005).

### III. Discussion

The defendant Commissioner argues that Mr. Murphy does presently receive kosher meal trays "which satisfy the requirements for Halal and all typical Islamic dietary requirements." Dkt. 48 at 2 (citing *Jones v. Carter*, 915 F.3d 1147, 1148 (7th Cir. 2019)). He further asserts that Mr. Murphy "does not claim that his particular practice of Islam requires the provision of Halal meat" and states in his complaint that "he merely wants Halal food." *Id.* Thus, the Commissioner argues,

Mr. Murphy fails to establish that he is entitled to preliminary injunctive relief, that he is likely to succeed on the merits, and that he will suffer irreparable harm. *Id.* at 3. The Court agrees that Mr. Murphy has not established that he is entitled to preliminary injunctive relief.

As set forth in his complaint, Mr. Murphy's claims concern the IDOC's failure to give out "halal trays" and makes no mention that his religious beliefs require him to eat halal meat, nor do his claims state why kosher trays are inadequate. Dkt. 1. Mr. Murphy states that the relief he seeks is for halal food to be given out "to any Muslin that wants it" and for commissary prices for halal items to be reduced. *Id.* In his motion, Mr. Murphy states he has been deprived of a "halal meal tray" and is constantly being forced to eat "meat un-halal meal"—or "kosher food." Dkt. 45 at 1-3. In his brief, Mr. Murphy states that the IDOC has failed to provide him with "Regular Halal Food with Respect to Plaintiff Islamic Beliefs" but does not identify his specific beliefs, any foods that he cannot have in his diet, or how in conjunction with his beliefs the kosher meals are not halal. Dkt. 46 at 4. He generally claims that kosher food is not halal. Dkt. 45 at 2. Mr. Murphy requests that he be provided with at least four (4) "halal meal or halal meat" or "halal [pre]-packages" per week until his release. *Id.* at 3; dkt. 46 at 8.

Only in his reply[1] does Mr. Murphy state the religious sect that he follows called "Figh of Abu HanaFi, AKA the HanaFi Figh," and that the _meat on the kosher and Passover trays are all that he claims to not be halal_ due to the manner of slaughter.[2] Dkt. 51 at 3-5 (emphasis added).

---

[1] Mr. Murphy is reminded that the Court need not consider new arguments raised in a reply. "[W]e have repeatedly recognized that district courts are entitled to treat an argument raised for the first time in a reply brief as waived." *O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020); *see also Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012) ("[A]rguments raised for the first time in a reply brief are deemed waived.").

[2] Mr. Murphy writes that "the meat is not Halal on the kosher tray as well as the Passover tray they are not slaughtered by believing Jew's there for not Halal as well Allah name was not said before

Mr. Murphy explicitly states that he follows "the very same sect as Roman Lee Jones" and knows that Mr. Jones is being provided halal pre-packaged meat. *Id.* at 1-5. In his reply, Mr. Murphy references—but does not provide quotes from or attachments to—an Islamic book called "Ascent to Felicity" which is an Islamic creed that he contends "clearly states" how to ritually slaughter meat and which meats to eat and not to eat. *Id.* at 3. He additionally references that the Holy Qur'an states to "eat the Food of the People of the Book[.]" *Id.* This does not demonstrate to the Court that Mr. Murphy's beliefs require him to eat meat.

The Court's ruling in *Jones v. Commissioner, IDOC* is distinguishable from Mr. Murphy's arguments that he is entitled to preliminary injunctive relief. *See* No. 1:16-cv-2887-WTL-MJD, 2017 WL 3398002 (S.D. Ind. Aug. 8, 2017). In *Jones*, the plaintiff claimed that his religious practices required him to maintain a "halal diet" that must avoid prohibited foods but that also must regularly incorporate meat. *Id.* at *2. "Although Jones would prefer to have halal meals, in the absence of halal meals, his religious beliefs allow him to eat kosher meals that include kosher meat." *Id.* Mr. Jones acknowledged that the kosher trays with the kosher meat were "acceptable." *Id.* at *3. This Court found that Mr. Jones had demonstrated that the kosher vegetarian diet provided by the prison required him to engage in conduct that seriously violated his religious beliefs by "foregoing meat provided by Allah." *Id.* It was not the kosher diet itself that was a substantial burden, but rather, the fact that the kosher diet provided by the facility was vegetarian only. *Id.* Accordingly, this Court entered an injunction that required that the IDOC provide Mr. Jones "with meals that provide halal *or* kosher meat on a regular basis" and concluded that "*pre-packaged kosher trays* served to inmates at prisons that do not have a kosher kitchen would,

---

the slaughter Allah, Prophet Muhammad, Abu Hanafi order me-n-other to be very sure the food is Halal." Dkt. 51 at 4 [sic].

according to the evidence presented to the Court, satisfy the requirements of Jones's religious beliefs." *Id.* (emphasis added). The decision was left up to the IDOC to decide which option was most effective but posited that kosher trays with meat were in compliance and permissible. The Seventh Circuit affirmed the decision noting that "there is overlap in halal and Jewish kosher requirements" and that some Muslims find kosher food to be an acceptable alternative to a purely halal diet. *Jones*, 915 F.3d at 1148 (Jones did not argue that the differences between kosher and halal diets mattered for his prison diet, rather he argued that a vegetarian diet was not nutritionally adequate. Jones filed his suit when his request for kosher trays that included meat were denied.).

To the extent Mr. Murphy relies on the findings in *Jones* to establish his likelihood to succeed on the merits of his claims, he fails to meet this burden. In *Jones*, this Court ordered the provision of halal or kosher meat – not halal meat only. Moreover, in its review of this decision, the Seventh Circuit did not hold that a kosher diet itself created a substantial burden. Though it is presumable that even members of the same religious sect could hold different beliefs, Mr. Murphy's reference to the *Jones* case as support for his arguments is convoluted at best. His attempts to reference *Jones* seem to cut both ways – that he should receive meat like Mr. Jones argued but that kosher meat is unacceptable, while kosher meat was Mr. Jones' preference rather than his religious requirement. Mr. Murphy has not shown that *his* religious beliefs require him to eat meat. Moreover, his requests for relief reiterate this in his asking for the provision of a "halal meal" *or* "halal meat." By Mr. Murphy's own contentions, other than the kosher meat, he believes the kosher and Passover trays satisfy halal requirements in all other aspects.

Mr. Murphy has provided no authority that the failure of the IDOC to provide him with a halal certified meal burdened him from practicing his religious beliefs. *But see Hearn v. Kennell*, No. 07-1235, 2009 WL 3460455 at *5 (C.D. Ill. Oct. 22, 2009) ("Although the plaintiff was not

provided with a Halal diet, he was given multiple alternatives and was not forced to consume any foods that he believed were in violation of his faith. Further, there are no facts before this court that indicate the plaintiff's religion requires a Halal diet."), *aff'd*, 433 F. App'x 483 (7th Cir. 2011) (argument regarding district court's ruling on First Amendment and RLUIPA claims waived). The defendants' exhibits indicate that Mr. Murphy pled guilty to a disciplinary charge of unauthorized possession of food items in June 2019 when he voluntarily took a regular tray when he was on a kosher diet. Dkt. 48-1 at 2. Mr. Murphy's kosher diet was revoked, and he later reapplied in December 2019. Dkt. 48-2; dkt. 48-3. In his application for a religious diet, Mr. Murphy wrote that he "wanted halal" but was told that was not an option and stated, "I guess I take kosher to eat as half the way as Allah said to." Dkt. 48-3. Mr. Murphy was approved to receive a kosher diet on February 11, 2020, and continued to receive it when he filed his motion. Dkt. 48-4; dkt. 48-5. The Court finds no evidence in the record that Mr. Murphy was forced to eat any food in violation of his religious beliefs.

The defendant argues that kosher, "a diet which by most standards meets Halal, without a further showing of Plaintiff's religious needs, does not constitute a substantial burden upon Plaintiff's religious exercise." Dkt. 48 at 7. The Court agrees. For the aforementioned reasons, Mr. Murphy has not shown a likelihood of success on the merits, and for these same reasons, he has not persuaded the Court that he will suffer irreparable harm by continuing to receive a kosher diet.

### IV. Conclusion

"[A]n applicant for preliminary relief bears a significant burden[.]" *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). Mr. Murphy has not met that burden. Accordingly, his motion for preliminary injunction, dkt. [45], is **DENIED.**

**IT IS SO ORDERED.**

Date:   11/23/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JOSHUA WAYNE MURPHY
149291
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Thomas Joseph Flynn
INDIANA ATTORNEY GENERAL
tom.flynn@atg.in.gov

Mollie Ann Slinker
INDIANA ATTORNEY GENERAL
mollie.slinker@atg.in.gov