UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JOSHUA WAYNE MURPHY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:19-cv-00571-JRS-MJD |
| ) | |
| COMMISSIONER, INDIANA DEPARTMENT ) | |
| OF CORRECTION, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING DEFENDANT'S
UNOPPOSED MOTION FOR SUMMARY JUDGMENT**

Plaintiff Joshua Murphy, an Indiana Department of Correction (IDOC) inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983, related to allegations that the IDOC burdened his freedoms to exercise his religious beliefs while he was incarcerated at Wabash Valley Correctional Facility. Dkt. 3. Specifically, Mr. Murphy is a Sunni Muslim, and he alleges that the IDOC would not provide him a Halal meal tray while it provides Kosher trays to other prisoners at no cost, and that the Halal food available at the commissary is too expensive for Muslims to pay. *Id.* at 2. His First Amendment and Religious Land Use and Institutionalized Persons Act (RLUIPA) claims proceed against defendant Robert E. Carter, Jr., the IDOC Commissioner. *Id.*

The Commissioner seeks resolution of these claims in his motion for summary judgment. Dkt. 58. Mr. Murphy did not respond. Mr. Murphy filed this action while he was still a prisoner, and he has since been released from IDOC custody.[1]

---

[1] According to IDOC Offender Data, Mr. Murphy was returned to court authority on release on February 12, 2021.
*See* https://www.in.gov/apps/indcorrection/ofs/ofs?offnum=149291&search2.x=26&search2.y=4 (last visited Sept. 16, 2021).

For the reasons explained below, the Commissioner's unopposed motion for summary judgment, dkt. [58], is **GRANTED**.

## I. Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit*." Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must inform the Court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

The Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable

jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Despite being granted an extension of time to respond to the motion for summary judgment, Mr. Murphy failed to do so by March 10, 2021. *See* dkt. 64. Mr. Murphy was released from custody shortly after the Court issued its Order of February 1, 2021, granting him additional time to respond to the motion for summary judgment. To date, no mail was ever returned to the Court as undeliverable. *See* Public Docket Sheet. Mr. Murphy has not filed anything in this action beyond his notice of upcoming change of address on February 5, 2021. Dkt. 65. It is Mr. Murphy's obligation to monitor and litigate this case. Mr. Murphy was provided with a notice regarding his right to respond and submit evidence in opposition to the Commissioner's motion for summary judgment along with the defendant's motion, corresponding brief, and designated evidence, on December 9, 2020, while he was still at Wabash Valley. *See* dkt. 61 (certification of service to Murphy via US Mail, first class).

Accordingly, facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. L.R. 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"). This does not alter the summary judgment standard, but it does "[r]educe[] the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997). Thus, "[e]ven where a non-movant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment

3

[i]s proper given the undisputed facts.'" *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

## II. Material Facts

The following facts, unopposed by Mr. Murphy and supported by admissible evidence, are accepted as true.

At all times relevant to his allegations, Mr. Murphy was incarcerated at Wabash Valley. Dkt. 1. Mr. Murphy is a Sunni Muslim, which has been documented since his 2011 entrance to the IDOC. *Id.*; dkt. 59-6, ¶ 5 (David Liebel Affidavit). Mr. Murphy initially applied to receive Kosher meals on March 9, 2019, his request was approved, and he began to receive Kosher meal trays on March 22, 2019. Dkt. 59-6, ¶ 6; dkt. 59-2.

In June 2019, while enrolled in the Kosher program, Mr. Murphy received a conduct report after a correctional officer observed him taking a "standard meal tray," rather than his Kosher tray. Dkt. 59-6, ¶ 7; dkt. 59-1 (IDOC report of disciplinary documents). Mr. Murphy pled guilty to the disciplinary code violation and was removed from the Kosher program. Dkt. 59-1; dkt. 59-2. Mr. Murphy filed this lawsuit on November 25, 2019, and he did not apply to renew his application for Kosher meals until December 6, 2019, *after* he filed his complaint. Dkt. 59-6, ¶ 8; dkt. 59-3; dkt. 1. Mr. Murphy's December 2019 religious diet application stated that he wanted Halal but "guessed" he would take Kosher meals if Halal was not an option."[2] Dkt. 59-3. His request was approved, and he resumed receiving Kosher trays. *Id.*; dkt. 59-4; dkt. 59-6, ¶ 9. Mr. Murphy still

---

[2] "**I want Halal** but I'm told Halal is not an option. Allah said Halal is the things and permitted by Allah. The eating of those things only which have been permitted by Allah., one who does so will be rewarded by Allah; and one who does not do so will be punished by Allah. So if Halal is not an option but is an option on commissary which is not fair. You will sell me overpriced Halal food. **I guess I take Kosher to eat as half the way** as Allah said to." Dkt. 59-3 (Murphy's December 2019 application) (cleaned up) (emphasis added).

received Kosher meals at the time the Commissioner moved for summary judgment in December 2020. *Id.*, ¶ 10.

David Liebel, IDOC Director of Religious Services, attested that in general "keeping Halal in Islam is analogous to keeping Kosher in Judaism," and that there are "remarkable similarities between Kosher and Halal" in terms of slaughter practices, forbidden foods, and cleanliness. *Id.*, ¶¶ 19-20. "Many mainstream American interpretations of Islam would hold that by keeping Kosher, one keeps Halal," though, "some stricter American Muslims might reject Kosher and insist on Halal certification of the food." *Id.*, ¶¶ 21-22. Mr. Liebel attests that the IDOC does not have "widespread demand" for a separate Halal food line because the "overwhelming majority of Muslims in IDOC custody" find that the Kosher trays meet their Halal requirements. *Id.*, ¶ 23.

The IDOC offers "numerous dietary alternatives to offenders who must keep either Kosher or Halal in order to efficaciously exercise their religious beliefs." *Id.*, ¶ 17. Kosher, vegan, and lacto/ovo vegetarian meals are no-cost alternative options, and none of these "non-standard meals" contain "any haram (forbidden) ingredients." *Id.*, ¶¶ 12, 17, 24. Meat on the Kosher meal trays "is certified as Kosher by Milmar-Spring Valley Food Group, LLC, wherein the animal is slaughtered with a cut across the throat and all blood drained in a hygienic manner." *Id.*, ¶ 13. Vegan meals are prepared with separate utensils from those used for standard meal trays, and the IDOC maintains and operates "Kosher production kitchens" which provide "Global Foods Industries (GFI) lacto/ovo meals" that are both Kosher and Halal certified." *Id.*, ¶¶ 14-15. Halal meat that is sold through commissary is also certified as Halal. *Id.*, ¶ 16. "No offender is ever forced to consume anything which violates the dictates of their conscience." *Id.*, ¶ 18.

### III. Discussion

This case involves a claim for injunctive relief and nominal damages under the First Amendment and RLUIPA. Dkt. 3 at 3.

Claims under the First Amendment and RLUIPA are evaluated under the substantial burden test, which requires the plaintiff to show that the defendant substantially burdened his free exercise rights. *See Patel v. Bureau of Prisons*, 515 F.3d 807, 814 (8th Cir. 2008) ("[T]he same definition of 'substantial burden' applies under the Free Exercise Clause, RFRA, and RLUIPA"). "[A] substantial burden on the free exercise of religion . . . is one that forces adherents of a religion to refrain from religiously motivated conduct, inhibits or constrains conduct or expression that manifests a central tenant of a person's religious beliefs, or compels conduct or expression that is contrary to those beliefs." *Koger v. Bryan*, 523 F.3d 789, 798 (7th Cir. 2008) (internal quotation and citation omitted). It is not for the Court to determine whether the plaintiff's "religious beliefs are mistaken or insubstantial. Instead our narrow function . . . in this context is to determine whether the line drawn reflects an honest conviction." *Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 725 (2014) (internal quotation omitted). "[A] substantial burden can exist even if alternatives to enduring it are available." *Njie v. Dorethy*, 766 F. App'x 387, 391 (7th Cir. 2019) (citing *Hobby Lobby*, 573 U.S. at 720-23).

Once a RLUIPA plaintiff shows that the defendant has substantially burdened his free exercise of his sincerely held religious beliefs, the burden shifts to the defendant to show that its policy represents the least restrictive means to further a compelling government interest. *Holt v. Hobbs*, 135 S. Ct. 853, 863 (2015). This is "the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 544 (1997). Even so, RLUIPA "affords prison officials ample ability to maintain security." *Holt*, 135 S. Ct. at 866 "[P]rison security is a compelling state

interest, and . . . deference is due to institutional officials' expertise in this area." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005).

### A. Injunctive Relief

As a preliminary matter, the Court need not consider any injunctive relief in this matter. At all times relevant to Mr. Murphy's claims, he was an IDOC inmate incarcerated at Wabash Valley. However, during the course of this litigation, Mr. Murphy was released from IDOC custody. Thus, any injunctive relief he seeks—that the IDOC provide him with a Halal meal or Halal pre-packages four times per week until his release—is **rendered moot** because Mr. Murphy is no longer in custody to receive such meals. However, the Court's analysis does not end here.

### B. Damages[3]

Mr. Murphy contends that he was denied access to Halal meat or a Halal meal tray, that the Halal meals from the commissary were cost prohibitive, and that he only had the option to eat Kosher meals, which are not Halal. Dkt. 46 at 3 (Murphy's brief in support of preliminary injunction). But he has established nothing more than a preference for a specific diet over the available non-standard meal options offered by the IDOC. The Commissioner argues that Mr. Murphy's receipt of Kosher trays, "[a] diet which by many standards meets Halal without a further

---

[3] In his complaint, Mr. Murphy named only the IDOC as a defendant and sought $75,000 in damages. At screening, the Court held that Indiana had not waived sovereign immunity as to damages claims under RLUIPA, so any official-capacity claims for compensatory damages were barred. Dkt. 3 at 2. Instead of dismissing the complaint, the Court liberally construed it as seeking nominal damages from the IDOC Commissioner. *Id.* at 3. While this litigation was pending, the Supreme Court explained that plaintiffs could seek compensatory damages under RLUIPA from government officials in their individual capacities. *Tanzin v. Tanvir*, 141 S. Ct. 486, 492−93 (2020). Mr. Murphy never moved to reconsider the screening order, nor did he amend his complaint to include compensatory damages claims. He tried to amend once—before *Tanzin*—but failed to submit a proposed amended complaint as required by the local rules. *See* dkt. 23 (motion to amend claim); dkt. 25 (denying motion to amend without prejudice for failure to attach proposed amended complaint). **Regardless, there is no evidence before the Court that would allow any damages claim against any defendant to survive summary judgment**.

showing of [his] religious needs," does not establish that he was substantially burdened from religious exercise. Dkt. 59 at 2. The Court agrees.

The Court thoroughly addressed Mr. Murphy's lack of evidence in its denial of preliminary injunctive relief. Dkt. 53. Mr. Murphy's brief in support of a preliminary injunction did not identify his specific beliefs, any foods that he could not have in his diet, or how Kosher meals were not Halal in connection with his beliefs. Dkt. 53 at 4. The Court acknowledged that in his reply, he stated he follows a religious sect "Figh of Abu HanaFi, AKA the HanaFi Figh," and that the meat on the Kosher trays was the only item that he claimed was not "Halal," due to the manner of slaughter.[4] *Id.* at 4. Though this briefing referenced page numbers of the Holy Qur'an and an Islamic book, "Ascent to Felicity," which Mr. Murphy said "clearly states" how to slaughter meats and which meats to eat and not to eat, Mr. Murphy did not provide quotes from or attachments to any religious texts, and thus, he did not provide specific, admissible evidence to support his claims. *Id.*

Further, Mr. Murphy failed to respond to the Commissioner's motion for summary judgment, and thus, there is no more evidence now then what was in the record at the time the Court denied his motion for preliminary injunctive relief. Mr. Murphy's religious beliefs have not been specifically articulated. And he has produced no evidence that the Kosher meals available to him failed to meet his religious obligation to avoid non-Halal food. *Cf. Jones v. Carter*, 915 F.3d 1147 (7th Cir. 2019) ("Since there is overlap in halal and Jewish kosher requirements, some Muslims . . . find kosher food to be an acceptable alternative to a purely halal diet.").

---

[4] Mr. Murphy wrote that ""the meat is not Halal on the kosher tray as well as the Passover tray they are not slaughtered by believing Jew's there for not Halal as well Allah name was not said before the slaughter Allah, Prophet Muhammad, Abu Hanafi order me-n-other to be very sure the food is Halal." Dkt. 51 at 4 [sic].

It is undisputed that Mr. Murphy applied for and received Kosher food trays. He was not forced to eat any food in violation of his religious beliefs. The IDOC provided multiple non-standard meal options, all of which did not contain forbidden ingredients. The Kosher diet provided by the IDOC is Kosher certified, and many mainstream American interpretations of Islam hold that "by keeping Kosher, one keeps Halal." Dkt. 59-6, ¶¶ 13, 21. Mr. Murphy has not shown that his religious beliefs definitively require any further restrictive practice. The Court reiterates from its order denying preliminary injunctive relief that:

> Mr. Murphy has not presented any contrary authority that the IDOC's failure to provide him with a halal certified meal burdened him from practicing his religious beliefs. *But see Hearn v. Kennell*, No. 07-1235, 2009 WL 3460455 at *5 (C.D. Ill. Oct. 22, 2009) ("Although the plaintiff was not provided with a Halal diet, he was given multiple alternatives and was not forced to consume any foods that he believed were in violation of his faith. Further, there are no facts before this court that indicate the plaintiff's religion requires a Halal diet."), *aff'd* 433 F. App'x 483 (7th Cir. 2011) (argument regarding district court's ruling on First Amendment and RLUIPA claims waived).

Dkt. 53 at 7.

Because Mr. Murphy has shown no substantial burden, the Commissioner is entitled to summary judgment on the merits.

### IV. Conclusion

For the reasons explained above, the defendant's unopposed motion for summary judgment, dkt. [58], is **GRANTED**.

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 9/20/2021

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JOSHUA WAYNE MURPHY
1001 N. Indiana Street
Kokomo, IN 46901

Brandon Carothers
INDIANA ATTORNEY GENERAL
bcarothers@atg.in.gov

Thomas Joseph Flynn
INDIANA ATTORNEY GENERAL
tom.flynn@atg.in.gov